UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOSHUA ALLEN STRICKLIN                                              PLAINTIFF
ADC #138119

V.                          No. 5:18CV00100-JM-JTR

STARK, Captain,
Cummins Unit, ADC, *et al.*                                         DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Joshua Allen Stricklin ("Stricklin") is a prisoner at the Cummins Unit of the Arkansas Department of Correction ("ADC"). He has filed a *pro se* § 1983 Complaint and an Amended Complaint alleging that Defendants violated ADC policy and his constitutional rights by refusing to provide him with any

administrative grievance forms. *Docs. 2 & 5*. Before Stricklin may proceed with this case, the Court must screen his claims.[1]

## II. Discussion

Stricklin alleges that, from March 23 to April 26, 2018, Defendants Sergeant Agnew ("Agnew"), Lieutenant Griffin ("Griffin"), Lieutenant Wade ("Wade"), Lieutenant Avery ("Avery"), Lieutenant Bass ("Bass"), Sergeant Nailer ("Nailer"), Sergeant Bobby Jones ("Jones"), Sergeant James ("James"), Sergeant G. Smit ("Smit") and Sergeant Boatner ("Boatner") refused to provide him any administrative grievance forms. According to Stricklin, he requested forms from each of these Defendants, and each told him there were "no available" forms in his barracks. Stricklin alleges that Defendants' actions were "a conscious effort to sabotage and prevent him from filing grievances" regarding prison officials' refusal to issue him a mattress for ten days (March 23 to April 2, 2018).[2] *Doc. 2 at 4; Doc. 5 at 4.*

---

[1] The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

[2] Stricklin filed a separate § 1983 lawsuit alleging that the ten-day mattress denial amounted to inhumane conditions of confinement in violation of the Eighth Amendment. *Stricklin v. Griffin,* E.D. Ark. No. 5:18cv00093-BSM-JTR (*Stricklin I*). On October 29, 2018, the Court dismissed that

Stricklin alleges that Defendants' conduct violated ADC policy, which requires that grievance forms be "readily available" in each housing area. He also alleges that their conduct violated his constitutional right to access the courts because it prevented him from exhausting his administrative remedies about the mattress denial, which he was required to do before presenting claims on the issue to the federal court and to the Arkansas State Claims Commission ("Commission"). *Doc. 2 at 4-6; Doc. 5 at 4, 6-8*.

Stricklin sues Defendants in their official and individual capacities, and he seeks compensatory and punitive damages. *Doc. 2 at 2 & 5; Doc. 5 at 2 & 5*.

### A. Defendant Stark

In his initial Complaint, Stricklin named Captain Stark ("Stark") as a Defendant, but he did not make any factual or legal allegations against him. *Doc. 2 at 1*. The Court ordered Stricklin to amend his Complaint to explain how Stark personally participated in denying his constitutional rights. *Doc. 4 at 2*. Stricklin's Amended Complaint does not identify Stark as a Defendant, nor does it contain any factual or legal allegations about him. *Doc. 5 at 1-2 & 4*.

Accordingly, the Court recommends that Stark be dismissed from this § 1983 action, without prejudice.

---

case for failure to state a claim. *Id., docs. 13 & 16*. Stricklin does not challenge the mattress denial in this action.

### B. Violation of ADC Policy

Stricklin alleges that Defendants violated the ADC grievance policy, which requires that grievance forms be "readily available to any inmate in any housing area at any time." *Doc. 2 at 4-6.*

As a matter of law, the violation of prison policy, standing alone, does not rise to the level of a constitutional violation actionable under § 1983. *Moore v. Rowley,* 126 Fed. Appx. 759, 760 (8th Cir. 2005); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997). In addition, it is well settled that prisoners do not have a due process right to enforce compliance with internal prison rules or regulations. *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003).

Finally, the Eighth Circuit has made it clear that prisoners do not have a constitutional right to a grievance procedure. *Walker v. Bertsch,* 745 Fed. Appx. 664, 664 (8th Cir. 2018) (holding that prisoner did not state a due process claim regarding the prison's grievance system, "as the grievance system does not give rise to a liberty interest requiring due process protection"); *Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) (grievance system is a "procedural right only" and does not "confer any substantive right upon the inmates"). Thus, there is no § 1983 liability simply because a prison official fails to process a grievance, or even when the official prevents a prisoner from filing a grievance. *Williams v. Robinson*, 623 Fed. Appx. 832, 833 (8th Cir. 2015) (allegation

that prisoner was "not allowed to file a grievance" regarding outgoing mail did not state a viable claim); *Buckley,* 997 F.2d at 495.

Accordingly, Stricklin's claim, that Defendants Agnew, Griffin, Wade, Avery, Bass, Nailer, Jones, James, Smit and Boatner violated ADC policy requiring that grievance forms be "readily available," fails to state a viable claim for relief under § 1983.

### C. Constitutional Right to Access the Courts

Stricklin alleges that the refusal of Defendants Agnew, Griffin, Wade, Avery, Bass, Nailer, Jones, James, Smit, and Boatner to provide him with grievance forms violated his constitutional right to access the courts because: (1) it "constructively and literally" prevented him from satisfying the exhaustion requirement for filing a § 1983 claim with the federal courts about the mattress-denial issue; and (2) it "direct[ly] result[ed]" in the dismissal of a case he had filed with the Claims Commission about the issue. *Doc. 2 at 4-5; Doc. 5 at 4*.

Prisoners have a constitutional right to access the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977) (this right is "established beyond doubt").[3] To have standing

---

[3] The constitutional source for the right of access to the court is "unsettled." *Christopher v. Harbury,* 536 U.S. 403, 415 n.12 (2002) (noting that courts have grounded the right in the Privileges and Immunities Clause of Article IV, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses); *see Murray v. Giarratano,* 492 U.S. 1, 11 n.6 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law and as an aspect of equal protection.") (internal citations omitted); *Earl v. Fabian,* 556 F.3d 717, 726 (8th Cir. 2009) ("Access to the courts is a constitutional right whose basis is unsettled.").

to proceed with a court access claim, a prisoner must show that he was "actually injured" in regard to a "nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (*citing Harbury*, 536 U.S. at 413). In this respect, "actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996). Furthermore, actual injury occurs, for constitutional purposes, only when a prisoner's impeded claim was an attack on his sentence or an action for "vindication of fundamental civil rights" regarding his conditions of confinement. *Id.* at 354-55; *White,* 494 F.3d at 680. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis,* 518 U.S. at 355 (emphasis in original).

Finally, in a "backward-looking" court access claim, such as this one, the prisoner must also show that he has been denied access to a remedy that is unavailable in a current or future lawsuit. *Harbury,* 536 U.S. at 413-15 (a "backward-looking" claim is one in which the "official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular

6

order of relief") (internal citations omitted).[4] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* at 415.

Thus, to establish an "actual injury" sufficient to proceed with his court access claim, Stricklin must identify: (1) an arguably meritorious underlying claim regarding his conditions of confinement;[5] (2) actions by Defendants that impeded litigation of that claim; and (3) a remedy that may be awarded that would not otherwise be available. *See Harbury,* 536 U.S. at 415.

1. Stricklin's Claim That He Was Denied Access to the Federal Courts

Stricklin argues that Defendants' refusal to provide any grievance forms "constructively and literally prevent[ed] [him] from exhausting [his] legal claims in [federal] court concerning being deprived of a mattress for … 10 days." *Doc. 2 at 4*. This claim clearly fails for lack of an "actual injury."

Before filing this lawsuit, Stricklin filed a separate § 1983 action in this Court alleging that he had been denied a mattress for ten days (March 23 to April 2, 2018), in violation of the Eighth Amendment. *Stricklin I, supra* note 2. On October 29,

---

[4]In contrast, a "forward-looking" court access claim is one in which "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," such as in cases involving denial of access to a prison law library. *Harbury,* 536 U.S. at 413.

[5]Stricklin's mattress-denial claim obviously was not an attack on his sentence.

7

2018, the Court dismissed *Stricklin I* for failure to state a viable claim, concluding that Stricklin's allegation "did not rise to the level of a constitutional violation." *Id., docs. 13 & 16*. In that action, Stricklin specifically alleged that prison officials had "sabotaged" his efforts to file an administrative grievance about the mattress issue by refusing to provide any grievance forms. However, as the Court explained, the alleged lack of access to the ADC grievance process "did not prevent [Stricklin] from initiating this § 1983 lawsuit, nor has it prevented the Court from adjudicating his claims and determining them to be non-meritorious." *Id., doc. 13 at 8*. Thus, regardless of whether Stricklin had exhausted his ADC administrative remedies about the mattress issue, the Court reviewed his underlying claim and found it to be without merit.

Because Stricklin was in no way prevented or impeded from filing a § 1983 lawsuit in federal court about the mattress denial, this aspect of his constitutional court access claim must be dismissed.

2. Stricklin's Claim That He Was Denied Access to Claims Commission

Stricklin also argues that the Claims Commission's dismissal of his mattress-denial claim was a "direct result" of Defendants' refusal to provide grievance forms. *Doc. 5 at 4-5*. This claim also fails.

According to documents attached to his Amended Complaint, on April 26, 2018, Stricklin filed a claim with the Claims Commission seeking $10,000 in

damages because he was deprived of a mattress. The ADC moved to dismiss his claim arguing, *inter alia,* that Stricklin failed to exhaust his administrative remedies because he did not file a grievance with the ADC about the issue. Stricklin did *not* respond to the motion to dismiss. *Id. at 6.*

On August 7, 2018, the Claims Commission granted the ADC's motion to dismiss. Its Order stated:

> Under the doctrine of exhaustion of administrative remedies, a claimant must utilize and exhaust the administrative remedies before seeking relief from the Claims Commission. *See Ark. Dept. of Health and Human Servs. v. Smith,* 370 Ark. 490, 492-93 (2007). The purpose of this doctrine is to provide the agency with an opportunity to address the issue. *See id.* Where a claimant fails to exhaust his or her administrative remedies, the Claims Commission lacks jurisdiction to hear the claim.
>
> … Based upon the lack of documents attached to Claimant's claim and Claimant's failure to respond to the [motion to dismiss], the Claims Commission finds that Claimant failed to grieve the mattress issue. As such, the Claims Commission finds that Claimant failed to exhaust his administrative remedies and that dismissal is proper.

*Doc. 5 at 7.*

Stricklin did not submit to this Court a copy of the claim he filed with the Claims Commission, nor does he explain the basis for that claim other than that he was "denied a mattress from 3-23-18 to 4-2-18." *Id. at 4.* To adequately plead an access-to-the-courts claim, a prisoner is required to *describe in his § 1983 complaint* the underlying cause of action that was allegedly impeded so that the Court can

determine whether it is "nonfrivolous" and "arguably meritorious." *Harbury*, 536 U.S. at 415-16.

If Stricklin's Claims Commission action was for anything other than "vindication of fundamental civil rights," it fails under *Lewis,* as explained above. *Lewis,* 518 U.S. at 354-55; *see Nation v. Dickerson,* No. 2:16cv00134-BSM, 2017 WL 1393700 (E.D. Ark. Apr. 14, 2017) (dismissal of prisoner's Claims Commission action was not "actual injury" under the Constitution because his "underlying legal claims were based on violations of prison policy, not an attack on his conviction or an action to vindicate his civil rights").

The result is the same if the Court assumes that Stricklin raised the same inhumane conditions of confinement claim before the Claims Commission that he raised in *Stricklin I.* Because his mattress denial claim in *Stricklin I* was found to be *non-meritorious,* it follows that his underlying legal claim before the Claims Commission was also *non-meritorious,* regardless of whether he had administratively exhausted that claim.

In addition, Stricklin has not shown that Defendants' alleged refusal to provide grievance forms *actually impeded* him from litigating his action before the Claims Commission. Stricklin's Claims Commission action was dismissed for lack of administrative exhaustion. However, he did *not* respond to the ADC's motion to dismiss on this basis; he did *not* file a motion to reconsider; and he did *not* appeal

the Claims Commission's dismissal. *See* Ark. Code Ann. § 19-10-211(a)(1) (Westlaw 2019) (allowing 40 days from the Claims Commission's final order to file a motion for reconsideration or a notice of appeal to the General Assembly). Thus, Stricklin was not *prevented* from making his arguments about the lack of grievance forms; he simply chose not to do so. In short, he fails to explain why he could not have avoided dismissal by arguing to the Claims Commission that prison officials obstructed his efforts to exhaust when they refused to provide any grievance forms.

Finally, Stricklin has not shown, as required by *Harbury,* that he had no remedy other than his allegedly thwarted claim before the Claims Commission. At the time the Claims Commission dismissed his claim, his § 1983 action in *Stricklin I* – raising the same claim that he was denied a mattress for ten days – was still pending. In *Stricklin I,* the Court ultimately addressed the merits of his mattress claim, finding it to be without merit. Thus, he did not "lose" the ability to present the mattress claim, nor was he prevented from fully litigating it to resolution.

Because Stricklin did not suffer an actual injury related to his Claims Commission claim, the Court recommends that this aspect of his constitutional court access claim also be dismissed for failure to state a claim upon which relief may be granted.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Stricklin's Complaint and Amended Complaint (*Docs. 2 & 5*) be DISMISSED, WITHOUT PREJUDICE.

2. The dismissal of this case be counted as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 14th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE